SERVICE BOLT & NUT CO. PROFIT SHARING TRUST, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1438–80—1440–80.     Filed May 20, 1982.

[1]Cases of the following petitioners are consolidated herewith: Service Bolt & Nut of Akron, Inc. Profit Sharing Trust, docket No. 1439–80; Service Bolt & Nut of Pennsylvania, Inc. Profit Sharing Trust, docket No. 1440–80.

*John P. Rice, Jr.*, for the petitioners.
*John P. Graham*, for the respondent.

OPINION

NIMS, *Judge*: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes:

| Docket No. | | TYE | Deficiency | Additions to tax sec. 6651(a)(1)[2] |
|---|---|---|---|---|
| 1438–80 | Service Bolt & Nut Co. Profit Sharing Trust | 9/30/75 | $38,946.72 | $9,736.68 |
| 1439–80 | Service Bolt & Nut of Akron, Inc. Profit Sharing Trust | 12/31/74 12/31/75 | 9,146.07 3,163.72 | 2,286.52 790.93 |
| 1440–80 | Service Bolt & Nut of Pennsylvania, Inc. Profit Sharing Trust | 12/31/74 | 4,125.25 | 1,031.31 |

The issues for decision are: (1) Whether petitioners, as profit-sharing trusts qualified under sections 401(a) and 501(a), received "unrelated business taxable income" within the meaning of section 512 in their capacity as limited partners in various wholesale fastener distributing partnerships; (2) whether petitioners, if liable for tax on unrelated business taxable income under section 511, are also liable for additions to tax under section 6651(a)(1) for their failure to file returns in the years before the Court; and (3) whether the respondent is estopped from asserting the deficiencies and additions to tax which he determined in docket Nos. 1439–80 and 1440–80.

This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference, with the exceptions noted in the margin.[3]

---

[2]All section references are to the Internal Revenue Code of 1954 in effect during the years before the Court, unless otherwise specifically indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure.

[3]The stipulation includes the following two paragraphs:

"18. If called as a witness in this proceeding, Mr. John B. Eldred would testify that he telephoned Mr. John P. Rice, Jr., on or about August 9, 1978, and explained that the

The address of each petitioner was 3280 West 67th Place, Cleveland, Ohio, at the time the respective petitions were filed in this case.

Petitioner in docket No. 1438–80, Service Bolt & Nut Co. Profit Sharing Trust (hereinafter SBN Co.), did not file a tax return for the taxable year ending September 30, 1975.

Petitioner in docket No. 1439–80, Service Bolt & Nut of Akron, Inc. Profit Sharing Trust (hereinafter Akron), did not file a tax return for the taxable years ending December 31, 1974, and December 31, 1975.

Petitioner in docket No. 1440–80, Service Bolt & Nut of Pennsylvania, Inc. Profit Sharing Trust (hereinafter Pennsylvania), did not file a tax return for the taxable year ending December 31, 1974.

Each petitioner was at all times relevant herein a trust for a profit-sharing plan qualified under section 401(a) and claimed at all times relevant herein a tax-exempt status under section 501(a).

On July 1, 1974, the following five limited partnerships were established under the Ohio Uniform Limited Partnership Act: DWH & Associates, DRM & Associates, TWK & Associates, RWW & Associates, and RHM & Associates. Each of these partnerships consisted of one general partner (owning a 10-percent profit interest) and four limited partners (each owning profit interest of 22 or 23 percent). The general partner of each partnership listed above was, respectively: Service Bolt & Nut

---

assessments made on the basis of the 30-day letters were to be abated as erroneous but that a statutory notice of deficiency was to be issued with respect to each petitioner in accord with the National Office response to the technical advice request.

\*         \*         \*         \*         \*         \*         \*

"22. If called as a witness in this proceeding, Mr. John P. Rice, Jr., would testify that he has no present recollection of the telephone call to him from Mr. John B. Eldred, referred to at paragraph 18., herein before."

While the parties stipulated the above two paragraphs as facts, they are not facts from which this Court may form an opinion as to whether the above-mentioned telephone call ever occurred. The Court has had no opportunity to view the demeanor of these potential witnesses; nor have these potential witnesses' abilities to recall past events been tested by cross-examination. Having no basis on which to choose between the above two contradictory proposed statements, we simply decline to enter any finding of fact regarding the alleged telephone call of Aug. 9, 1978.

of Pennsylvania, Inc., Service Bolt & Nut of Lorain, Inc. (incorporated that same day as a wholly owned subsidiary of Service Bolt & Nut Co., Inc., and immediately thereafter sold to a third party or parties), Service Bolt & Nut Co., Inc., Service Bolt & Nut of Cleveland, Inc. (also incorporated that same day as a wholly owned subsidiary of Service Bolt & Nut Co., Inc., and immediately thereafter sold to a third party or parties), and Service Bolt & Nut of Akron, Inc.

On the same day, each general partner sold its inventory of fasteners to its respective partnership. Each partnership thereafter actively engaged in the wholesale fastener business. If carried on by charitable, etc., organizations described in section 511, discussed *infra*, such activity would constitute an "unrelated trade or business" defined in section 513(a).[4]

Profit-sharing trusts of each of the five corporate general partners acquired all of the limited partnership interests of the five new partnerships, doing so in such a fashion that each profit-sharing trust was a 22-percent or 23-percent limited partner in each partnership, except the partnership of which its respective corporation was a general partner.

Petitioners' limited partnership interests in the five partnerships were, thus, as follows:

| Petitioner | Partnership | Profit interest |
|---|---|---|
| SBN Co. | DWH & Associates | 22% |
| | DRM & Associates | 22 |
| | RHM & Associates | 23 |
| | RWW & Associates | 23 |
| | | |
| Akron | DRM & Associates | 23 |
| | TWK & Associates | 23 |
| | RWW & Associates | 22 |
| | DWH & Associates | 22 |

[4]Sec. 513(a) provides, in relevant part:

SEC. 513. UNRELATED TRADE OR BUSINESS.

(a) GENERAL RULE.—The term "unrelated trade or business" means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * *

| Pennsylvania | DRM & Associates | 23 |
| | TWK & Associates | 23 |
| | RWW & Associates | 22 |
| | RHM & Associates | 22 |

For the taxable year ending September 30, 1975, petitioner SBN Co. received gross income of $88,318 from its partnership interests and net income of $75,692.

For the taxable year ending December 31, 1974, petitioner Akron received gross income of $105,102.52 from its partnership interests and net income of $26,219. For the taxable year ending December 31, 1975, petitioner Akron received gross income of $13,927 from its partnership interests and net income of $12,927.

For the taxable year ending December 31, 1974, petitioner Pennsylvania received gross income of $102,799 from its partnership interests and net income of $15,475.

Notwithstanding their general income tax exemption under section 501(a), section 511 imposes a tax on profit-sharing trusts qualified under section 401(a) to the extent such trusts receive "unrelated business taxable income." The primary dispute in this case is whether petitioners received any unrelated business taxable income within the meaning of section 511 as a result of holding limited partnership interests in various wholesale fastener distributing partnerships.

Petitioners argue that a limited partnership interest is a passive investment that cannot, unlike a general partnership interest, produce unrelated business taxable income.

Respondent, on the other hand, contends that a limited partnership interest is no different from a general partnership interest for purposes of the section 511 tax: Both can produce unrelated business taxable income.

The concept of and tax imposed upon unrelated business income of exempt organizations derives essentially from Supplement U of the 1939 Code. In its latter codification, this concept appears at sections 511 through 515. Section 511 imposes a tax on the unrelated business taxable income (as defined in section 512) of certain tax-exempt organizations. As regards the treatment of income from partnership interests held by exempt organizations, the relevant provisions of the 1954 Code are sections 512(c) and 513(b). Section 512(c) provides:

(c) Special Rules Applicable to Partnerships.—If a trade or business regularly carried on by a partnership of which an organization is a member is an unrelated trade or business with respect to such organization, such organization in computing its unrelated business taxable income shall, subject to the exceptions, additions, and limitations contained in subsection (b), include its share (whether or not distributed) of the gross income of the partnership from such unrelated trade or business and its share of the partnership deductions directly connected with such gross income. If the taxable year of the organization is different from that of the partnership, the amounts to be so included or deducted in computing the unrelated business taxable income shall be based upon the income and deductions of the partnership for any taxable year of the partnership ending within or with the taxable year of the organization.

Section 513(b) provides in relevant part:

(b) Special Rule for Trusts.—The term "unrelated trade or business" means, in the case of—

\* \* \* \* \* \* \*

(2) a trust described in section 401(a), or section 501(c)(17), which is exempt from tax under section 501(a);

any trade or business regularly carried on by such trust or by a partnership of which it is a member.

Petitioners contend that these references to partnerships in sections 512(c) and 513(b) apply only in the case of general partnership interests held by exempt organizations and not to limited partnership interests. They argue that limited partnership income is analogous to such passive-income items as dividends, interest, royalties, and some rents. Congress, petitioners argue, could not have meant to make taxable the income from a passive investment such as a limited partnership interest, where the exempt organization could not actively manage the business in a fashion to result in unfair competition. We disagree.

In examining the application of a particular statute, our first reference must be to the words of that statute. Here, the provisions in question (secs. 512(c) and 513 (b)) impose a tax on an exempt organization's distributive share of partnership gross income (less allocable deductions) attributable to a partnership's regularly carrying on a trade or business unrelated to the exempt organization's purpose. The only statutory requirement for the imposition of this tax is that the organization be a "member" of such a partnership. Petitioners would limit the meaning of the word "member" to "general partner." There is nothing in the language or structure of these sections

to demand or even justify reading into them petitioners' narrower requirement. See *Braunstein v. Commissioner*, 374 U.S. 65, 70 (1963); *George Van Camp & Sons Co. v. American Can Co.*, 278 U.S. 245, 253 (1929); *Warrensburg Board & Paper Corp. v. Commissioner*, 77 T.C. 1107, 1111 (1981).

Additionally, the legislative history of these sections does not support petitioners' narrow reading. In discussing the application of the Supplement U tax in the case of partnership interests, both the House and Senate reports from 1950 contain the following example:

For example, if an exempt educational institution is a *silent partner* in a partnership which runs a barrel factory and such partnership also holds stock in a pottery manufacturing corporation, the exempt organization would include in its unrelated business income its share of the barrel factory income, but not its proportionate share of any dividends received by the partnership from the pottery corporation. [S. Rept. 2375, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 561; H. Rept. 2319, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 460. Emphasis supplied.]

While, as petitioners point out, a "silent partner" is not necessarily the same thing as a "limited partner," we think the above example clearly demonstrates Congress' intent to include exempt organizations' distributive shares of partnership income within the Supplement U tax, regardless of whether, as partners, they behaved in an active or passive manner with regard to the management of the partnership's unrelated trades or businesses.

Indeed, it would have been unlikely for Congress to have thought otherwise. One problem which Congress was addressing in the Supplement U tax was the availability of pools of tax-exempt income which gave previously nontaxable trades or businesses unfair competitive advantages over their taxable counterparts. In the case of a partnership, these pools of income can be created when a partner who otherwise would have to withdraw some of his partnership income each year to pay the tax on his distributive share of partnership income does not have to withdraw any cash from the partnership because he has no income tax to pay. Whether the tax-exempt partner actively manages the underlying unrelated partnership business or not is thus irrelevant to the issue of whether the partnership as a whole has an unfair competitive advan-

tage from the accumulation of an unwithdrawn pool of tax-exempt income.[5]

We agree with respondent that petitioner's reliance upon such cases as *Freedman v. Tax Review Board of the City of Philadelphia*, 212 Pa. Super. 442, 243 A.2d 130 (1968), affd. 434 Pa. 282, 258 A.2d 323 (1969), is inappropriate in construing the Internal Revenue Code. That case construed State statutes and municipal ordinances applicable in an entirely different context than that presented here. Likewise, *Hill Family Foundation v. United States*, 347 F. Supp. 1225 (D. Minn. 1972), is not related to the business at hand. The court there interpreted the phrase "trade or business regularly carried on" in a particular factual context, after finding that there was no joint venture or partnership.

In short, we decline to strain the construction of the word "member" in sections 512(c) and 513(b) and defeat the intent of Congress. Therefore, we hold that an exempt trust which is a limited partner may receive unrelated business taxable income (within the meaning of section 512) through a limited partnership upon which the trust is taxable under section 511. Since it is undisputed that the wholesale fastener partnerships in which petitioners were members engaged in the type of activity which falls within the section 513(a) definition of unrelated trade or business, respondent's determinations of petitioners' liabilities for the tax imposed by section 511 must be sustained.[6]

The next issue for decision is the liability of petitioners for the additions to tax under section 6651(a)(1) for petitioners' failure to file returns for the years before the Court. The burden of proof is on petitioners to show that their failure to file was due to reasonable cause and not willful neglect. *Heman v. Commissioner*, 32 T.C. 479, 490 (1959), affd. in part and modified in part 283 F.2d 227 (8th Cir. 1960); Rule 142(a). The fact that this case was submitted fully stipulated does not alter this burden. See Rule 122(b).

---

[5]Petitioners do not contend that they fall within the narrow exception created by sec. 512(b)(13), relating to trusts created by wills of decedents dying between Aug. 16, 1954, and Jan. 1, 1957, and which was repealed by the Tax Reform Act of 1976. Sec. 1951(b)(8)(A), Pub. L. 94–455, 90 Stat. 1839.

[6]See also Rev. Rul. 79–222, 1979–2 C.B. 236.

There is no evidence in the record going to the issue of reasonable cause for failure to file. We do not know, for example, if petitioners embarked on their elaborate scheme of establishing corporations, partnerships, and trusts on the advice of competent tax counsel, or even against such advice. In the absence of any evidence, we hold that petitioners have failed to meet their burden of proof on this issue and are therefore liable for the additions to tax. See *West Side Tennis Club v. Commissioner*, 39 B.T.A. 149, 160 (1939), affd. 111 F.2d 6 (2d Cir. 1940).

The third issue for decision is whether the respondent is estopped by his conduct from asserting the deficiencies and additions to tax herein against petitioners Akron and Pennsylvania. The pertinent facts are as follows:

On September 6, 1977, petitioners in each of the three dockets received from the Office of the Internal Revenue Service in Cleveland, Ohio, a so-called 30-day letter proposing to tax each respective petitioner on income it had received from the partnership interests each petitioner owned.

On October 17, 1977, each petitioner was assessed income taxes and additions to the taxes for the years in issue on the basis of the 30-day letters.

On October 6, 1977, November 10, 1977, and December 1, 1977, extensions of time for filing a written protest were granted each petitioner, which extended the time for filing a written protest to December 16, 1977.

On December 16, 1977, a protest, request for National Office Conference, and a request for technical advice in behalf of each petitioner were received by the District Director at Cleveland, Ohio. These requests were forwarded to the Internal Revenue Service, Washington, D.C., on January 20, 1978, by the District Director, and the petitioners were so advised in writing on the same date. In the transmittal to Washington by the District Director on January 20, 1978, it was noted that the "Tax [was] inadvertently assessed."

On August 9, 1978, John B. Eldred, Chief, Technical Staff, Cleveland, Ohio, wrote John P. Rice, Jr., as attorney for each of the petitioners, on behalf of the District Director and enclosed for Rice's information copies of the National Office response to the technical advice request with respect to each of these petitioners and further notified Rice that "This rationale

will be included as a part of the statutory notices to be issued at an early date with respect to the above trusts."

Subsequently, Eldred requested the Cincinnati Service Center to adjust the prior assessments, made October 17, 1977, as follows: "This request for abatement of taxes, penalties and interest is due to the assessment having been made in error. A statutory notice is now being prepared and will be issued at an early date."

On January 8, 1979, the Cincinnati Service Center abated the prior assessments of tax and penalties and so notified each petitioner.

On November 1, 1979, statutory notices of deficiency were issued to each of petitioners.

On December 6, 1979, Rice wrote a letter to the Internal Revenue Service noting the adjustment by the Service and representing that on the basis of this advice the trustees of Pennsylvania had disbursed all of the funds in the trust to the beneficiaries and that a similar statement of adjustment had been received by the other petitioners herein.

Petitioners do not contest the timeliness of the statutory notices of deficiency, but rather they argue that respondent's assessments and abatements of assessments led them to believe that respondent would not issue deficiency notices relating to the taxes and additions to tax herein. Petitioners contend that in reliance on respondent's notices of abatement, Akron and Pennsylvania shortly thereafter ceased doing business and distributed all their assets to the trust beneficiaries. This, they claim, should estop respondent from the assertion of the instant deficiencies and additions to tax as against Akron and Pennsylvania.

As a preliminary matter, we note that the stipulated facts include no statement that Akron distributed all its assets to its beneficiaries. The stipulation refers only to Pennsylvania. Accordingly, assuming the doctrine of equitable estoppel were to apply in this case, as to Akron, the petitioners have failed to prove any detrimental reliance—a necessary element of equitable estoppel. *Sangers Home for Chronic Patients, Inc. v. Commissioner*, 72 T.C. 105, 115 (1979).

As to Pennsylvania, the Revenue Service's decision to abate the assessment of the taxes and additions to tax can in no way be construed as a bar to later court proceedings as to those

taxes and additions to tax. The decision by the IRS to abate the assessment previously made can in no way be viewed as an accord and satisfaction or other binding action sufficient to estop respondent from further proceedings regarding these taxable years. *Parks v. Commissioner*, 33 T.C. 298 (1959); *Miller v. Commissioner*, 23 T.C. 565 (1954), affd. 231 F.2d 8 (5th Cir. 1956). If petitioners in fact relied on such notice of abatement as a discharge of their tax liability, they did so because of a mistake as to the legal effect of such notice; but the respondent may not be estopped by such a taxpayer mistake. *Miller v. Commissioner, supra*, 23 T.C. at 569.

Accordingly, we hold that petitioners have failed to prove the elements necessary to estop respondent from asserting the instant deficiencies and additions to tax.

Petitioners' request for attorneys' fees is denied. *McQuiston v. Commissioner*, 78 T.C. 807 (1982).

*Decisions will be entered for the respondent.*