SERVICE BOLT & NUT CO., Profit Sharing Trust, Service Bolt & Nut of Akron, Inc., Profit Sharing Trust, Service Bolt & Nut of Pennsylvania, Inc., Profit Sharing Trust, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 82–1619, 82–1620 and 82–1621.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1983.

Decided Dec. 29, 1983.

John P. Rice, Jr., argued, Cleveland, Ohio, for petitioners.

Kenneth W. Gideon, Chief Counsel, I.R.S., Robert A. Bernstein, John A. Dudeck, Jr.,

argued, Glenn L. Archer, Jr. and Michael L. Paup, Tax Div., Dept. of Justice, Washington, D.C., for respondent.

Before KENNEDY and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

The principal issue raised by this appeal is one of first impression, namely, whether income received by profit sharing trusts qualified under § 401 of the Internal Revenue Code, 26 U.S.C. § 401,[1] from their limited partnership interests constituted unrelated business taxable income under § 512. Other issues raised by this appeal include whether the taxpayers were liable for additions to tax under § 6651(a)(1), whether the Commissioner of Internal Revenue was estopped from assessing the deficiencies and additions to tax at issue after abating an initial, erroneously imposed assessment, and whether the taxpayers were entitled to attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b).

In a decision announced May 20, 1982, the Tax Court held against the taxpayers on all issues. 78 T.C. 812 (1982). We affirm.

## I.

The three taxpayers, Service Bolt & Nut Co. Profit Sharing Trust (SBN Trust), Service Bolt & Nut of Akron, Inc. Profit Sharing Trust (Akron Trust), and Service Bolt & Nut of Pennsylvania, Inc. Profit Sharing Trust (Penn Trust), were established as profit sharing trusts qualified under § 401(a) by Service Bolt & Nut Co., Inc. (SBN Co.), Service Bolt & Nut of Akron, Inc. (SBN Akron), and Service Bolt & Nut of Pennsylvania, Inc. (SBN Penn), respec-

tively. At all times relevant, each trust claimed tax exempt status under § 501(a).

On July 1, 1974, a number of events relevant to this case occurred. SBN Co. created two wholly-owned subsidiaries: Service Bolt & Nut of Lorain, Inc. (SBN Lorain) and Service Bolt & Nut of Cleveland, Inc. (SBN Cleveland). SBN Co. immediately divested itself of the subsidiaries by selling its stock in them to a third party. SBN Lorain and SBN Cleveland each established a qualified profit sharing plan and trust: Service Bolt & Nut of Lorain, Inc. Profit Sharing Trust and Service Bolt & Nut of Cleveland, Inc. Profit Sharing Trust, respectively. SBN Co., SBN Akron, SBN Penn, SBN Lorain, and SBN Cleveland each subscribed as the general partner to the articles of one of five partnerships created under the Ohio Uniform Limited Partnership Act, Ohio Rev.Code § 1781.01 et seq.[2] Each corporation sold its inventory to the partnership in which it was the general partner and caused that partnership to sell limited partnerships totalling ninety percent of the interest in the partnership to the profit sharing trusts established by the other Service Nut & Bolt corporations.[3]

As limited partners, the trusts did not participate in the management of the partnerships and their liability was limited to the amount of their capital contribution. The partnerships engaged actively in the wholesale fastener distribution business.

For the taxable year ending September 30, 1975, SBN Trust received from its partnership interests gross income of $88,318.46 and net income of $75,692.00. SBN Trust did not file a tax return for the taxable year ending September 30, 1975.

---

1. Unless otherwise specified, all section references are to the Internal Revenue Code in effect during the years at issue.

2. The five limited partnerships created were DWH & Associates, DRM & Associates, TWK & Associates, RWW & Associates, and RHM & Associates.

3. The limited partnership interests of the trusts were as follows:

| | Partnership | Profits Interest |
|---|---|---|
| SBN Trust | DWH & Associates | 22% |
| | DRM & Associates | 22 |
| | RHM & Associates | 23 |
| | RWW & Associates | 23 |
| Akron Trust | DRM & Associates | 23% |
| | TWK & Associates | 23 |
| | RWW & Associates | 22 |
| | DWH & Associates | 22 |
| Penn Trust | DRM & Associates | 23% |
| | TWK & Associates | 23 |
| | RWW & Associates | 22 |
| | RHM & Associates | 22 |

For the taxable year ending December 31, 1974, Akron Trust received from its partnership interests gross income of $105,102.52 and net income of $26,219.00. For the taxable year ending December 31, 1975, Akron Trust received from its partnership interests gross income of $13,927.49 and net income of $12,927.00. Akron Trust did not file a tax return for either year.

For the taxable year ending December 31, 1974, Penn Trust received from its partnership interests gross income of $102,799.41 and net income of $15,475.00. Penn Trust did not file a tax return for the taxable year ending December 31, 1974.

On September 6, 1977, each trust received from the Office of the Internal Revenue Service (IRS) a "30-day letter" which proposed to tax the trust on the income it had received from its limited partnership interests. On October 17, 1977, on the basis of the "30-day letter", but without statutory authorization,[4] the Commissioner assessed income taxes and additions to tax against each trust.

Following the granting of extensions of time for filing a written protest, the District Director of the IRS at Cleveland, Ohio received on December 16, 1977, a timely protest, a request for a National Office Conference, and a request for technical advice from each trust. These requests were forwarded to the Washington, D.C. office of IRS on January 20, 1978 and the trusts were so advised by letter.

On August 9, 1978, John B. Eldred, Chief, Technical Staff, wrote John P. Rice, Jr., attorney for the trusts, on behalf of the District Director of IRS and enclosed for Rice's information copies of the National Office's response to the request for technical advice. Eldred also informed Rice in writing that "[t]his rationale will be included as a part of the statutory notices to be issued at an early date with respect to the above trusts."[5]

Eldred subsequently requested the IRS Cincinnati Service Center to adjust the October 17, 1977 assessments "due to the assessment having been made in error." Eldred also notified the Center that a statutory notice was being prepared and would be issued at an early date. On January 8, 1979, the Center abated the assessments and so notified each trust. On November 1, 1979, IRS issued statutory notices of deficiency to each trust.

On December 6, 1979, Rice informed IRS by letter that, on the basis of the January 8, 1979 abatement, the trustees of Penn Trust had disbursed all funds in the trust to the beneficiaries. Rice also informed IRS that the other trusts had received a statement of adjustment.

On January 29, 1980, each trust filed a petition in the Tax Court for a redetermination of the assessed deficiencies. The cases were consolidated and submitted on a stipulated statement of facts. In its decision, the Tax Court sustained the determinations of the Commissioner and held that the trusts received unrelated business taxable income in their capacity as limited partners, that the trusts were liable for additions to tax under § 6651(a)(1), that the Commissioner was not estopped from reassessing taxes and additions to tax after abating the initial, erroneously imposed tax, and that the trusts were not entitled to attorneys' fees under the EAJA. The trusts, contending that the Tax Court erroneously resolved each issue, filed this appeal.

## II.

In sustaining the deficiencies assessed by the Commissioner, the Tax Court adopted the Commissioner's contention that, absent one narrow exception not relevant here, neither the language of the controlling sections of the Code nor the policies underlying those sections warranted treatment of a tax exempt trust's income from its limited partnership interests different from that of a

---

4. Section 6213(a) requires a 90-day notice prior to the assessment of tax deficiencies.

5. We note that the Tax Court declined to make any finding of fact concerning an alleged telephone conversation between Eldred and Rice on August 9, 1978. 78 T.C. at 813 n. 3.

tax exempt trust's income from its general partnership interests. The Tax Court held that both general and limited partnership interests could produce unrelated business taxable income.

The argument that the trusts advance on appeal is the same as that presented to the Tax Court. Briefly summarized, the argument runs as follows: As the legislative history shows, the purpose of the tax on unrelated business income is to prevent unfair competition by otherwise nontaxable trades and businesses with their taxable counterparts. The language of § 512(a)(1),[6] which provides a general definition of the term "unrelated business taxable income", indicates that a tax exempt organization's income from an unrelated trade or business would be taxable only where the organization actively engages in the management, operation, and control of the trade or business. Accordingly, income from a limited partnership interest to the trust would not be taxable because a limited partnership interest is a passive investment that does not permit the trust to actively engage in the management, operation or control of the partnership. This conclusion is corroborated by the use in §§ 512(c)[7] and 513(b)[8] of the term "member", the natural, ordinary and familiar referent of which, it is argued, is a general partner. Finally, although § 512(c) has never been judicially interpreted, the interpretation of the section proposed by the trusts is similar to the interpretation of the Philadelphia Net Profits Tax by the Superior Court of Pennsylvania. *Freedman v. Tax Review Board,* 212 Pa.Super. 442, 243 A.2d 130 (1968), *aff'd by an equally divided court,* 434 Pa. 282, 258 A.2d 323 (1969).

We conclude that this line of argument is meritless. Nothing in the language of the Code sections at issue nor in the purpose of the statute as expressed in its legislative history compels a determination that an exempt trust's income from a limited partnership should be excluded from the computation of the trust's unrelated business taxable income.

Turning to the statutory language, we believe the trusts' reliance on § 512(a)(1) to be misplaced. Although § 512(a)(1) provides a general definition of "unrelated business taxable income", § 512(c) establishes a special rule for the computation of an exempt organization's unrelated business taxable income received from its partnership interests. This rule expressly provides that an exempt organization can be taxed on its share of the income received from a partnership of which it is a member even though the partnership, and not the exempt organization, is the entity actively engaged

---

**6.** Section 512(a)(1) provides:

(a) Definition. For purposes of this title—
(1) General rule. Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b).

**7.** Section 512(c) provides:

(c) SPECIAL RULES APPLICABLE TO PARTNERSHIPS—If a trade or business regularly carried on by a partnership of which an organization is a member is an unrelated trade or business with respect to such organization, such organization in computing its unrelated business taxable income shall, subject to the exceptions, additions, and limitations contained in subsection (b), include its share (whether or not distributed) of the gross income of the partnership from such unrelated trade or business and its share of the partnership deductions directly connected with such gross income. If the taxable year of the organization is different from that of the partnership, the amounts to be so included or deducted in computing the unrelated business taxable income shall be based upon the income and deductions of the partnership for any taxable year of the partnership ending within or with the taxable year of the organization.

**8.** Section 513(b) provides in relevant part:

(b) SPECIAL RULE FOR TRUSTS.—The term "unrelated trade or business" means, in the case of—

\*   \*   \*   \*   \*   \*

(2) a trust described in section 401(a), or section 501(c)(17), which is exempt from tax under section 501(a);

any trade or business regularly carried on by such trust or by a partnership of which it is a member.

in carrying on the trade or business. Additionally, § 513(b) establishes a special rule for defining "unrelated trade or business" with respect to trusts. This rule expressly provides for the treatment of any trade or business carried on by a partnership of which it is a member as unrelated with respect to that trust. Accordingly, neither of the sections that are relevant to the determination of whether an exempt trust's income from its limited partnership interests should be treated as taxable requires that the trust be actively engaged in the partnership.

Contrary to the trusts' contentions, there is nothing in the language or the structure of § 512(c) or 513(b) that delimits the scope of "member" to general partners. As an initial point, both sections use the term without qualification and without distinguishing the status of a general partner from that of a limited one. More importantly, § 7701(a)(2) expressly defines the term "partner" to include members of a partnership. This section, which has general application throughout the Internal Revenue Code, indicates clearly that "member" is not limited in its scope of reference to general partners. Indeed, in construing other sections of the Code, courts have repeatedly treated limited, as well as general, partners as members of the partnership. *E.g., Hawkins v. C.I.R.,* 713 F.2d 347 (8th Cir.1983). Finally, in the sole section in which Congress did distinguish between general and limited partnership interests for the purposes of the tax on unrelated business income, § 512(b)(13), it did so expressly.[9] In light of Congress's explicit distinction between general and limited partnership interests in § 512(b)(13), its failure to make that distinction explicit in other sections cannot be treated as a simple oversight. In short, the language of the relevant sections makes abundantly clear to us that for the purposes of computing the unrelated business taxable income of an exempt trust, a limited partner may be a member of a partnership. *See also* Rev. Rul. 79–222 (advising that an exempt trust's interest in a limited partnership carrying on an unrelated trade or business may result in unrelated business taxable income within the meaning of § 512).

The policies underlying the relevant sections provide further support for our conclusion that, apart from the exception contained in § 512(b)(13), income received by exempt trusts from limited partnership interests must be treated as unrelated business taxable income. Section 512(b)(13) provides an exclusion from unrelated business taxable income for income received from limited partnership interests by a testamentary charitable trust created by the will of an individual who died between August 16, 1954 and January 1, 1957. The legislative history of this section makes it

---

**9.** Section 512(b)(13), which has since been repealed, Pub.L. 94–455, 90 Stat. 1520 (1976), provided in relevant part:

(b) *Modifications.* The modifications referred to in subsection (a) are the following:

\* \* \* \* \* \*

(13) In the case of a trust—

(A) created by virtue of the provisions of the will of an individual who died after August 16, 1954, and before January 1, 1957,

(B) which, by virtue of the provisions of such will, is a limited partner in a partnership created under the laws of a State (i) providing for the creation of limited partnerships, and (ii) under which a limited partner has no right to take part in the control of the business without becoming liable as a general partner,

(C) which, at no time before or during a taxable year of the partnership ending within or with the taxable year of the trust, was (or was liable as) a general partner in such partnership, and

(D) which is required to distribute all of its income (within the meaning of section 643(b)) currently exclusively for religious, charitable, scientific, literary, or educational purposes, and which is required to distribute all of the corpus exclusively for such purposes,

there shall be excluded its share (determined under subsection (c) without regard to this paragraph and paragraph (11)) of gross income of the partnership as such limited partner and of the partnership deductions directly connected with such income, but, if such share of gross income exceeds such share of deductions, only to the extent that the partnership makes distributions during its taxable year which are attributable to such gross income.

clear that Congress intended to create a narrow exception to the existing law. That existing law recognized no distinction between the interest of a general partner and that of a limited partner. S.Rep. No. 1402, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Admin.News 1958, p. 2311, *reprinted in* 1958–1 C.B. 656, 657.

■ There can be little doubt that the primary purpose of § 511 *et seq.* was, as the trusts contend, to prevent unfair competition by tax exempt organizations with taxed business concerns. *Cooper Tire & Rubber Company Employees' Retirement Fund v. C.I.R.*, 306 F.2d 20, 21 (6th Cir.1962) (per curiam). *See* S.Rep. No. 2375, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Serv. 3053, 3081–83. *See generally* Note, *The Macaroni Monopoly: The Developing Concept of Unrelated Business Income of Exempt Organizations*, 81 Harv.L. Rev. 1280, 1281–82 (1968). As the Tax Court found, however, the construction of the statutes urged by the trusts would encourage unfair competition in that pools of tax exempt income could be created in a partnership "when a partner who otherwise would have to withdraw some of his partnership income each year to pay the tax on his distributive share does not have to withdraw any cash from the partnership because he has no income tax to pay." 78 T.C. at 818. As the Tax Court also correctly observed, the unfair competition can arise regardless of whether the tax exempt partner is a general or a limited partner. It is our conclusion, therefore, that Congress did not intend to exclude from the computation of an exempt trust's unrelated business taxable income that income received from its limited partnership interests.

As a final point, we note that the trusts' reliance on *Freedman* is ill-founded. The issue of whether income from a limited partnership interest should be taxed under a state's earnings tax simply provides no guidance as to whether federal taxation statutes enacted primarily to prevent unfair competition require tax exempt trusts to be taxed on income from their limited partnership interests.

In sum, we conclude that the Tax Court properly sustained the deficiencies assessed by the Commissioner against the trusts.

### III.

■ The trusts raise several other issues on appeal. They argue that the Tax Court erred in sustaining the Commissioner's assessment of additions to tax under § 6651(a)(1) for their failure to file returns for the years in issue. The trusts contend that a real, nonfrivolous dispute existed concerning their tax liability on the income received from their limited partnership interests and that, consequently, their failure to file timely returns was due to reasonable cause. There is no question that a taxpayer is not subject to additions to tax under § 6651(a)(1) where the failure to file is due to reasonable cause and not willful neglect. However, § 6651(a)(1) places on the taxpayer the burden of showing that the failure to file in a timely fashion was "due to reasonable cause and not due to willful neglect." *Estate of Geraci v. C.I.R.*, 502 F.2d 1148, 1149–50 (6th Cir.1974) (per curiam), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). The record in this case is void of any evidence of the reason that the trusts failed to file their income tax returns in a timely fashion. Thus it is void of evidence that it was for a reasonable cause. Based on this record, we cannot reverse the decision of the Tax Court. *See West Side Tennis Club v. C.I.R.*, 111 F.2d 6, 9 (2d Cir.), *cert. denied*, 311 U.S. 674, 61 S.Ct. 40, 85 L.Ed. 434 (1940).

■ The trusts also argue that the Tax Court erred in holding that the Commissioner was not estopped from reassessing the deficiencies and additions to tax against Akron Trust and Penn Trust after they had ceased operations and distributed all their assets to the beneficiaries in reliance on the January 8, 1979 notice of abatement. This argument is meritless from a legal standpoint because the abatement of an assessment is not a binding action that can estop the Commissioner from reassessing a deficiency. *C.I.R. v. Mooneyhan*, 404 F.2d 522, 528 (6th Cir.1968) (assessment of deficiency

for taxable year not estopped by prior refund of all taxes withheld for that year), *cert. denied,* 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969). Additionally, the argument is meritless from a factual standpoint with respect to Akron Trust because the record provides no basis for finding that it ceased operations and distributed its assets to the beneficiaries.

The Tax Court declined to award attorneys' fees to the trusts on the ground that the EAJA does not authorize the recovery of costs incurred in litigation in the Tax Court. We decline to resolve the issue of whether the Tax Court is authorized to award attorneys' fees in a proper case. Instead, we base our decision that the trusts are not entitled to recover attorneys' fees on the fact that, for the purposes of the EAJA, the trusts were not prevailing parties.

For the foregoing reasons, the decision of the Tax Court is affirmed.