GEORGE H. BAKER, SR., AND BESSIE J. BAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 12100-88
United States Tax Court
T.C. Memo 1990-635; 1990 Tax Ct. Memo LEXIS 707; 60 T.C.M. (CCH) 1443; T.C.M. (RIA) 90635; December 18, 1990, Filed *707 Decision will be entered under Rule 155. Held: The net capital gain deduction claimed by petitioners on their 1984 return is a tax preference item under section 57(a)(9)(A) for the purpose of computing their alternative minimum tax under section 55. Petitioners' liability for the alternative minimum tax is sustained. Held further: Petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence. George H. Baker, Sr., pro se. John W. Duncan, Terry W. Vincent, and Jeff P. Ehrlich, for the respondent. HALPERN, Judge. *
HALPERN
*2078 MEMORANDUM OPINION By the notice of deficiency dated February 29, 1988, respondent determined a deficiency in petitioners' Federal income tax for calendar year 1984 in the amount of $ 39,816, [1] together with additions to tax under section 6653(a)(1) and (2). [2] This case presents two questions: First, whether the net capital gain deduction claimed by petitioners for 1984 was a tax preference item under section 57 for the purpose of computing petitioners' alternative minimum tax under section 55, and, second, if we answer the first question in the affirmative and there is a resulting underpayment, whether such underpayment is due to petitioners' negligence or intentional disregard of rules or regulations *712 so as to give rise to the additions to tax determined under section 6653(a)(1) and (2). Following a dispute between the parties with regard to stipulations of facts proposed by each party, this Court ordered certain facts and evidence deemed accepted as established for purposes of this case. Subsequently, the parties submitted this case fully stipulated by the facts and evidence so deemed established. By this reference, such facts and evidence are incorporated into this opinion. We summarize below the pertinent facts. BACKGROUND
Petitioners are husband and wife. They resided in Dunlap, Illinois, when they filed the petition in this case. In 1967, petitioner George H. Baker, Sr. (Baker), received *713 U.S. patent No. 3,296,651 and Canadian patent No. 770,972, concerning a drapery support and related accessories conceived and developed by Baker (the Patents). In 1971, Baker assigned his interest in the Patents to the Baker Drapery Corporation (the Corporation) in consideration for $ 1 million, to be paid to Baker in installments. Baker previously had requested and received a ruling from respondent that, subject to the provisions of section 1231, any gain realized on the assignment to the Corporation of the Patents would constitute gain from the sale of a capital asset held for more than six months (i.e., long-term capital gain). Beginning in 1971, Baker received installments of the $ 1 million owed to him by the Corporation. Petitioners reported those payments under the installment method of accounting. In 1984, Baker received the final payment due him from the Corporation, in the amount of $ 337,569. Petitioners reported the full amount as long-term capital gain on their joint U.S. Individual Income Tax Return for 1984 (line 9 of Schedule D). After including several other capital gain items relatively small in amounts, petitioners reported on their 1984 return a net long-term *714 capital gain of $ 333,740 (line 19 of Schedule D) and a net capital gain of $ 322,713 (line 20 of Schedule D). The net capital gain resulted in a net capital gain deduction under section 1202 of $ 193,628 (line 22 of Schedule D). Petitioners neither included in their 1984 return any computation of the alternative minimum tax nor paid any such tax for 1984. Instead, petitioners computed and claimed an income tax refund for 1984 under the regular income tax provisions of section 1(a). On February 29, 1988, respondent mailed to petitioners a notice of deficiency. In the notice, respondent determined that petitioners' capital gain deduction was an item of tax preference and that petitioners were subject to the alternative minimum tax for 1984 in the amount of $ 39,816, along with additions to tax for negligence pursuant to section 6653(a)(1) and (2). In his notice of deficiency, however, respondent incorrectly calculated the alternative minimum tax and the deficiency. On line 15 of Schedule 3 attached to respondent's notice, total items of tax preference are stated incorrectly as $ 194,664, rather than correctly as $ 193,628. Respondent, thus, should have determined a deficiency *715 of $ 39,609, rather than $ 39,816. This Court notes that respondent has not recomputed the additions to tax under section 6653(a). If we hold for respondent with regard to the two questions at issue here, petitioners would be liable for a deficiency in the amount of $ 39,609 and for additions to tax properly computed pursuant to section 6653(a)(1) and (2). DISCUSSION
Alternative Minimum Tax
No dispute exists as to the facts. Whether petitioners are liable for any alternative minimum tax is purely a question of law. The answer depends on whether the net capital gain deduction allowable to petitioners by section 1202(a) *2079 is a tax preference item under section 57(a) for the purpose of computing alternative minimum taxable income under section 55(b). If it is, then petitioners are liable under section 55(a) for the alternative minimum tax in the amount of $ 39,609. We hold that they are so liable. Sections 55, 57, and 58 as applicable to 1984 imposed on individuals an alternative minimum tax. The alternative minimum tax is a tax, in addition to the regular income tax, imposed on various tax preference items. The alternative minimum tax generally is the *716 amount by which the tentative tax computed under the alternative minimum tax rules exceeds the taxpayer's regular income tax. See sec. 55(a). Congress first enacted a minimum tax in 1969. See Tax Reform Act of 1969, Pub. L. 91-172, sec. 301, 83 Stat. 487, 580-586, 1969-3 C.B. 10, 63-67. The U.S. Court of Appeals for the Ninth Circuit has stated that: "In enacting the minimum tax, Congress attempted to remedy general taxpayer distrust of the system growing from large numbers of taxpayers with large incomes who were yet paying no taxes." Okin v. Commissioner, 808 F.2d 1338, 1342 (9th Cir. 1987), appeal dismissed and cert. denied 484 U.S. 802 (1987). See S. Rept. 91-552 (1969), 1969-3 C.B. 423, 495-496. The alternative minimum tax regime is complicated, and need not be detailed here. For our purposes, it is sufficient to understand certain aspects of computing alternative minimum taxable income. [3] Alternative minimum taxable income is defined in section 55(b). Section 55(b) provides, generally, that an individual's alternative minimum taxable income is determined by adding and subtracting certain sums to and from the taxpayer's *717 adjusted gross income. Specifically, section 55(b)(2) requires the taxpayer's adjusted gross income to be "increased by the amount of items of tax preference." Items of tax preference are listed in section 57(a). For individuals, section 57(a)(9)(A) includes as a tax preference item "an amount equal to the net capital gain deduction for the taxable year determined under section 1202." Section 1202(a) permits an individual to claim as a deduction from gross income an amount equal to "60 percent of the amount of the net capital gain" for any taxable year. Net capital gain is defined as "the excess of the net long-term capital gain for the taxable year over the net short-term *718 capital loss for such year." Sec. 1222(11). Net long-term capital gain equals "the excess of long-term capital gains for the taxable year over the long-term capital losses for such year." Sec. 1222(7). Further, long-term capital gain means the "gain from the sale or exchange of a capital asset held for more than 1 year, if and to the extent such gain is taken into account in computing gross income." Sec. 1222(3). In 1984, petitioners received $ 337,569 pursuant to the assignment agreement. The parties have stipulated that Baker's gain from the assignment of the Patents was capital gain and that the sum of $ 337,569 received in 1984 constituted long-term capital gain. This stipulation is consistent with the conclusion reached by respondent in the ruling issued to Baker. As such, the sum of $ 337,569 needed to be included in the calculations of net long-term capital gain and net capital gain as defined in section 1222(7) and (11). Petitioners properly included the results of those calculations on lines 19 and 20, respectively, of Schedule D of their 1984 return. Section 1202(a) permits petitioners to take a deduction equal to 60 percent of the net capital gain. Accordingly, petitioners *719 claimed for 1984 a net capital gain deduction in the amount of $ 193,628, as reflected on line 22 of Schedule D to the 1984 return. Petitioners' net capital gain deduction in the amount of $ 193,628 constituted for 1984 a tax preference item. See sec. 57(a)(9)(A). We, thus, are justified in holding petitioners liable for the alternative minimum tax in the amount of $ 39,609. Before turning to respondent's determination on additions to tax under section 6653, we feel obligated to state that, while petitioners obviously are very talented people, they have presented several arguments that are difficult to understand. We here try to respond directly to a few of those arguments. Petitioners seemingly argue that, since the Patents were assigned to the Corporation in 1971, section 55 added to the Internal Revenue Code in the late 1970's did not apply to the installment payments received by Baker in 1984. See Revenue Act of 1978, Pub. L. 95-600, sec. 421(a), 92 Stat. 2763, 2871, 1978-3 C.B. (Vol. 1) 1, 105-111 (adding section 55). Petitioners cite part of the following language from the legislative history of the Revenue Act of 1978 to support their argument: *720 In general the provision is effective for taxable years beginning after 1978. * * * Thus, fiscal year taxpayers are to first be subject to the new minimum tax for their taxable year beginning in 1979. However, the provisions changing the effective date for the preferences for capital gains (to 70 percent of net capital gain) for purposes *2080 of the present law minimum tax is to apply for all sales or exchanges taking place after October 31, 1978. For purposes of both effective dates payments received after the effective date with respect to pre-effective date installment sales are to be taxed under the new provisions applicable generally to sales made after the effective date. S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 505. Petitioners misread the above language. The first two paragraphs respectively suggest that certain provisions became effective for taxable years beginning in 1979 and that other provisions became effective for sales or exchanges taking place after October 31, 1978. The third paragraph then considers installment payments received after those two effective dates as a result of sales completed before those effective dates. *721 Such installment payments are subject to the provisions that are effective at the time the payments are received, rather than the provisions in effect at the time the sales are made. The quoted language indicates congressional intent that section 55 was to apply to installment payments made after section 55 became effective. That intent reflects the well-settled principle that installment payments are subject to taxation under the provisions of the law in effect at the time the gain is recognized. Picchione v. Commissioner, 440 F.2d 170, 172 (1st Cir. 1971), affg. 54 T.C. 1490 (1970), cert. denied 404 U.S. 828 (1971); Snell v. Commissioner, 97 F.2d 891, 893 (5th Cir. 1938); Estate of Kearns v. Commissioner, 73 T.C. 1223, 1225 (1980). The fact that section 55 became effective after Baker's patents were assigned in 1971 is irrelevant to whether such section applies to the installment payment that petitioners received in 1984. The U.S. Court of Appeals for the Fifth Circuit described the effect of installment sales as follows: As to the instalment sales made in 1923, the taxpayer might have elected to *722 take his whole profit then and have had it taxed under the Revenue Act of 1921. He chose to defer realization of the profits on the deferred instalments. These thereby were left to fall under such provisions of the law as might be of force at their maturity. That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took in deferring the realization of his gains. * * * Snell v. Commissioner, 97 F.2d 891, 893 (5th Cir. 1938). In addition, petitioners seemingly are confused also as to what constitutes net long-term capital gain and net capital gain. Petitioners suggest that, since the assignment of the Patents involved no loss that could have been applied against the gain, no net capital gain could have resulted. In contradiction, petitioners also argue that Baker's basis in the Patents was determined by the price for which the Corporation purchased the patents from Baker. Petitioners are incorrect. In fact, sections 1011-1016 determine a taxpayer's adjusted basis in property for the purpose of computing the taxpayer's gain or loss from the sale or other disposition of the property. Section 1012 *723 provides that generally the taxpayer's basis in property is the cost of such property to such taxpayer (i.e., not the purchaser of the property). Section 1001(a) establishes that a taxpayer's gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis. The term "long-term capital gain" in section 1222(3) focuses on a taxpayer's capital gain from a single transaction. The terms "net long-term capital gain" and "net capital gain" in section 1222(7) and (11) concern a taxpayer's net gain from one or more transactions involving capital assets. Additions to Tax
In the notice of deficiency, respondent determined that, for 1984, petitioners were subject under section 6653(a) to the additions to tax for negligence or intentional disregard of rules or regulations. Petitioners bear the burden of proving that respondent's determination concerning such additions was erroneous. Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Petitioners' burden of proof is not affected by the fact that the parties submitted this case fully stipulated. *724 Borchers v. Commissioner, 95 T.C. (1990), appeal filed October 9, 1990 (8th Cir.); Service Bolt & Nut Co. Profit Sharing Trust v. Commissioner, 78 T.C. 812, 819 (1982), affd. 724 F.2d 519 (6th Cir. 1983). Section 6653(a)(1) imposes an addition to tax equal in amount to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax equal in amount to 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules or regulations. In the context of section 6653(a), negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Ferrell v. Commissioner, 90 T.C. 1154, 1201 (1988); *2081 Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have presented no evidence to counter the conclusion that their failure to report an alternative minimum tax for 1984 was due to negligence. [4] Section 57(a)(9)(A) clearly establishes the net capital *725 gain deduction as a tax preference item for the purpose of computing the alternative minimum tax under section 55. In addition, we observe that, although petitioners emphasize in their briefs how they carefully followed the instructions in preparing their 1984 return, they left blank line 52 of their return providing for the alternative minimum tax and failed to include Form 6251 showing the results of the computation of their alternative minimum tax. Furthermore, we note that line 22 of Schedule D of the 1984 return states that: "If line 22 is more than zero, [the taxpayer] may be liable for the alternative minimum tax. See Form 6251." Petitioners reported the amount of $ 193,628 on line 22 -- an amount considerably larger than zero. Petitioners' apparent failure to take note of the quoted language can be due only to negligence. A reasonable and ordinarily prudent person would have undertaken to determine whether any liability for the alternative minimum tax existed. Such an inquiry here would have produced an affirmative answer. *726 Under the circumstances, we are impelled to sustain respondent's determination that petitioners' entire underpayment is due to negligence and hold that petitioners are liable under section 6653(a)(1) and (2) for additions to tax. In light of the foregoing, Decision will be entered under Rule 155. Footnotes
*. By Order of the Chief Judge, this case was reassigned to Judge James S. Halpern for disposition.↩
1. Respondent since has stated that the correct deficiency is $ 39,609, not $ 39,816.↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. After alternative minimum taxable income is computed, an exemption amount is subtracted from the computed figure. The difference is multiplied by 20 percent and the product is compared with the regular income tax for the taxable year. Any excess of the former over the latter is the alternative minimum tax liability for that year. Sec. 55(a).↩
4. We note that, while petitioners' U.S. Individual Income Tax Return for 1984 was prepared professionally, petitioners have presented no evidence to show that the failure to report an alternative minimum tax was due to the negligence of the preparer of the return.↩