LEILA G. NEWHALL UNITRUST, WELLS FARGO BANK, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10195–93.                Filed March 6, 1995.

*Joe C. Luker, J. Scott Cummins,* and *John W. Ambrecht,* for petitioner.

*Linette Angelastro,* for respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies and additions to tax as follows:

| TYE | Deficiency | Addition to tax sec. 6661 [1] |
|---|---|---|
| Dec. 31, 1988 | $74,035 | $18,508.75 |
| Dec. 31, 1989 | 26,209 | - - - |

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In addition to challenging the foregoing determination of deficiencies, petitioner claims that it is entitled to a refund for each of the taxable years 1988 and 1989.

Wells Fargo Bank, trustee of petitioner, Leila G. Newhall Unitrust, had its legal residence in Santa Barbara, California, at the time the petition in this case was filed. Petitioner is a charitable remainder unitrust within the meaning of section 664(d)(2), and was created pursuant to a testamentary "devise" by Leila G. Newhall, who died in 1975.

Petitioner filed its Form 1041, U.S. Fiduciary Income Tax Return, for 1988 on June 29, 1989. It paid the tax shown on that return on April 15, and June 29, 1989. Petitioner filed its Form 1041 for 1989 on April 15, 1990, and paid the tax shown on that return on April 15, 1990.

As its claim for refund, petitioner filed amended Forms 1041 for the years 1988 and 1989. The parties stipulated that petitioner also filed a Form 1041 for 1987, and submitted a similar claim for refund with respect to that year. The refund

claims for all 3 years were filed on January 3, 1991, and set forth as the grounds for the claimed refunds (1) that petitioner had no unrelated business taxable income (UBTI) for the years at issue, or, in the alternative, (2) that if petitioner did have UBTI for the years at issue, it should be liable for tax only with respect to its UBTI.

Following an administrative review and conference with the Appeals Office of the Internal Revenue Service, the Commissioner denied petitioner's claims for refunds for the years 1987, 1988, and 1989. In a notice of deficiency issued February 11, 1993, the Commissioner further determined that there was a deficiency in Federal income taxes for 1988 and 1989.

Petitioner agrees that its Schedule D net gains for taxable years 1988 and 1989 should be increased as determined in the deficiency notice, thus conceding the only adjustments made by the Commissioner. The amount of refund owed petitioner, if any, remains at issue.

Petitioner was initially funded with 181,402 shares of common stock of Newhall Land & Farming Co. (the company). At the creation of petitioner in 1975, and until January 8, 1985, the company was a publicly traded corporation.

On March 9, 1983, the company underwent a partial liquidation. The company transferred certain real estate and mineral rights holdings to limited partnerships and distributed depository receipts for units in those partnerships to its stockholders. As of March 9, 1983, petitioner owned 86,000 shares of the company. On March 9, 1983, petitioner received one depository receipt for a unit in Newhall Investment Properties and one depository receipt for a unit in Newhall Resources (both California limited partnerships) for each 2 shares of the company common stock owned. Following the March 9, 1983, partial liquidation, petitioner owned 86,000 shares of the company and 43,000 shares in each of Newhall Investment Properties and Newhall Resources.

On January 8, 1985, the company underwent a complete liquidation. It transferred the remainder of its assets to a limited partnership, also named Newhall Land & Farming Co., and distributed depository receipts for units in the limited partnership to its stockholders, including petitioner. On January 8, 1985, petitioner received one depository receipt for a unit in Newhall Land & Farming Co. (a California lim-

ited partnership) in redemption of each share of the company common stock it owned.

As of the date of the final liquidation of the company, on January 8, 1985, petitioner owned 50,500 shares of a total 9,060,338 publicly held shares of the corporation. This ownership interest represented a 0.55737-percent ownership and voting interest in the corporation.

Newhall Land & Farming Co., Newhall Investment Properties, and Newhall Resources (collectively, the partnerships) were limited partnerships publicly traded on the New York Stock Exchange during taxable years 1988 and 1989. Petitioner did not purchase or otherwise acquire any interests in the partnerships, or any other partnerships, except for those units received in distributions in liquidation of the company described above.

Except for returning its proxy or otherwise voting its shares, petitioner could not and did not have any influence in the decision to liquidate the company and convert its structure from a corporation to a limited partnership. It did not intend in any manner to use its status as a charitable remainder unitrust to gain any competitive advantage for its investment in the company or the partnerships.

Petitioner first filed a Form 1041, U.S. Fiduciary Income Tax Return, for taxable year 1987. Prior to 1987, petitioner filed Form 5227, Split Interest Trust Information Return, as required for each year of its existence. Beginning with its 1987 Form 1041, petitioner has filed Federal income tax returns for each of its taxable years to date reflecting taxable income as follows:

| Year | Income (loss) from partnerships | Total taxable income | Tax paid |
|------|------|------|------|
| 1987 | $63,920 | $1,022,237 | $285,595 |
| 1988 | 178,929 | 170,676 | 52,241 |
| 1989 | 291,689 | 1,202,889 | 336,809 |
| 1990 | 156,591 | 255,695 | 71,595 |
| 1991 | 35,704 | 1,003,523 | 301,449 |
| 1992 | 24,728 | 658,921 | 194,115 |
| 1993 | (4,260) | 763,824 | 276,836 |

This case presents three issues for decision. The first is whether petitioner received UBTI under section 512(c). If we decide petitioner did receive UBTI, then we must decide whether petitioner is taxable under section 664(c) only to the

extent of its UBTI or on its entire net income. If we decide for the Commissioner on both of those issues, then we must decide whether petitioner is liable for the addition to tax under section 6661 for the taxable year 1988, as determined by the Commissioner. We consider the issues in that order.

1. Section 512 defines and provides rules for determining UBTI. Section 512(c) provides special rules for partnerships. It states in part:

If a trade or business regularly carried on by a partnership of which an organization is a member is an unrelated trade or business with respect to such organization, such organization in computing its unrelated business taxable income shall, subject to the exceptions, additions, and limitations contained in subsection (b), include its share (whether or not distributed) of the gross income of the partnership from such unrelated trade or business and its share of the partnership deductions directly connected with such gross income. * * *

As a preliminary matter, we note that section 512(c) was amended by section 10213(a) of the Omnibus Budget Reconciliation Act of 1987 (OBRA 1987), Pub. L. 100–203, 101 Stat. 1330–406, which placed the above-quoted language in section 512(c)(1). At the same time it added section 512(c)(2), which stated:

(2) SPECIAL RULE FOR PUBLICLY TRADED PARTNERSHIPS.—Notwithstanding any other provision of this section—

(A) any organization's share (whether or not distributed) of the gross income of a publicly traded partnership (as defined in section 469(k)(2)) shall be treated as gross income derived from an unrelated trade or business, and

(B) such organization's share of the partnership deductions shall be allowed in computing unrelated business taxable income.

The Commissioner's brief treated the provisions of section 512(c)(2) (as added by OBRA 1987) as determinative of whether petitioner received UBTI from its interests in limited partnerships. However, OBRA 1987 section 10213(b) stated: "Effective Date.—The amendment made by subsection (a) shall apply to partnership interests acquired after December 17, 1987." 101 Stat. 1330–407. Therefore, the amendments to section 512(c) made by OBRA 1987 section 10213(a) do not apply to the limited partnership interests at issue.[1] These

---

[1] The parties stipulated that petitioner received the limited partnership interests at issue in 1983 and 1985.

limited partnership interests must be judged under section 512(c) as it existed prior to OBRA 1987. The Commissioner's reply brief stated: "Inexplicably, petitioner ignores [section] 512(c)(2)". What is inexplicable is how the Commissioner could ignore the effective date of the amendment made to section 512(c).

With that said, we now turn to section 512(c) as quoted above. Stated simply, section 512(c) prevents a taxpayer from avoiding the UBTI rules by becoming a member of a partnership that carries on what would otherwise be an unrelated trade or business. If the trade or business of the partnership would be an unrelated trade or business of its member organization, then the organization, in computing UBTI, must include its distributive share of the partnership's income and deductions from that business.

Petitioner does not argue that the businesses conducted by the partnerships in which petitioner has interests would not be unrelated trades or businesses if conducted by petitioner. We find that issue to be conceded. See Rule 142(a). We must decide only whether petitioner was a "member" of the partnerships at issue.

Petitioner was a partner, albeit a limited partner, in three limited partnerships. For us to decide that petitioner was not a "member" of these partnerships, we would have to decide that by using the word "member" Congress intended to define a class more narrow than the complete class of partners.

Petitioner's argument as to the meaning of the word "member" is essentially the same as the contention made and rejected in *Service Bolt & Nut Co. Profit-Sharing Trust v. Commissioner,* 78 T.C. 812 (1982), affd. 724 F.2d 519 (6th Cir. 1983). As we stated then, "Petitioners would limit the meaning of the word 'member' to 'general partner.' There is nothing in the language or structure of these sections [512(c) and 513(b)] to demand or even justify reading into them petitioners' narrower requirement." *Id.* at 817–818.

Petitioner attempts to distinguish *Service Bolt & Nut Co.* on its facts. We agree that the facts are readily distinguishable. However, the language quoted above is clear and unambiguous. There is no support for a reading of section 512(c) that excludes limited partners from the definition of "members".

Petitioner argues that the addition of section 7704 and the subsequent repeal of section 512(c)(2)[2] (as added by OBRA 1987) support its conclusion that it was not a member of the limited partnerships at issue. The point is not well taken.

Section 7704 was added by OBRA 1987 section 10211(a), 101 Stat. 1330–403. The general rule of section 7704 is found in section 7704(a), which states that "For purposes of this title, except as provided in subsection (c) [not applicable here], a publicly traded partnership shall be treated as a corporation." Petitioner relies on this section to show its returns from its investments in limited partnerships were more like dividends than business income, and therefore should not be regarded as UBTI. See sec. 512(b)(1).

Petitioner's argument fails to persuade us. First, we note that section 7704 was added by the same act that added section 512(c)(2) (special rule for publicly traded partnerships). It is hardly likely that section 7704 was indirectly meant to exclude from UBTI income from publicly traded limited partnerships when the same Congress explicitly stated at the same time that the income from publicly traded partnerships was to be included in UBTI.

Second, the provisions of section 7704 will not apply to a partnership that was publicly traded on December 17, 1987, until December 31, 1997 (subject to certain conditions). See OBRA 1987 sec. 10211(c), 101 Stat. 1330–405. Therefore, for the years at issue the limited partnerships in which petitioner was a partner continued to be treated as partnerships.[3] We do not pass upon the effect of section 512(c) on an investment in a publicly traded partnership treated as a corporation, for that is not the case here.

Petitioner next argues that the repeal of (then) section 512(c)(2) (special rule for publicly traded partnerships) by the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103–66, sec. 13145(a), 107 Stat. 312, 443, evinces the intent of Congress to remove income from publicly traded partnerships from UBTI. Petitioner's argument goes too far. While the repeal of section 512(c)(2) removed the *automatic* classification of publicly traded partnership income as UBTI, a deter-

---

[2] Sec. 512(c)(2) was repealed in 1993. See *infra* p. 242.

[3] While the parties stipulated that the partnerships were "publicly traded on the New York Stock Exchange during taxable years 1988 and 1989", there is sufficient evidence in the record to conclude that public trading began prior to Dec. 17, 1987.

mination is still to be made as to whether the partnership income represents UBTI upon the basis of section 512(c) itself. As the legislative history makes clear, "The provision repeals the rule that *automatically* treats income from publicly-traded partnerships as UBTI. Thus, under the provision, investments in publicly-traded partnerships are treated the same as investments in other partnerships for purposes of the UBTI rules." H. Rept. 103–111, at 617 (1993) (emphasis supplied); see also H. Rept. 103–213, at 549 (1993).

Petitioner's final argument is that it never possessed the necessary intent to form a partnership. It argues that it merely possessed investments in corporate stock that, through no effort of its own, were converted to interests in limited partnerships.

Petitioner relies on two Supreme Court cases, *Commissioner v. Tower,* 327 U.S. 280 (1946), and *Commissioner v. Culbertson,* 337 U.S. 733 (1949), to show that it did not possess the necessary level of intent to form a partnership for Federal income tax purposes. It quotes the Supreme Court in stating that when determining whether a partnership exists, the question is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." *Commissioner v. Culbertson, supra* at 742. Petitioner argues that, as a limited partner, it did not "come together in the present conduct of the enterprise" because of its limited (or nonexistent) role in management. Therefore, according to petitioner, no partnership was formed. Petitioner's argument must fail.

Unlike the present case, both *Tower* and *Culbertson* involved situations where it was the Commissioner who was arguing against the existence of partnerships supposedly formed by the taxpayers. But it is well established that taxpayers are ordinarily bound by the form of their transaction while the *Government* can attack that form if it does not represent the substance of the transaction. See *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149 (1974); *Selfe v. United States,* 778 F.2d 769, 773 (11th Cir. 1985); *Spector v. Commissioner,* 641 F.2d 376, 381 (5th Cir. 1981), revg. and remanding 71 T.C. 1017 (1979).

Moreover, the record provides ample evidence that petitioner knew it was investing in a partnership. The summary of proxy statement for the March 8, 1983, special sharehold-

ers meeting of the Newhall Land & Farming Co. clearly states that one of the primary purposes behind the creation of the two original limited partnerships was the elimination of the corporate tax on the entities' earnings through the formation of partnerships not subject to tax. The summary goes on to state that rulings had been received from the Internal Revenue Service regarding the classification of the partnerships as partnerships for Federal income tax purposes. Finally, the summary clearly states:

> The advisability of the Plan depends in large part upon the continuing treatment of the Partnerships as partnerships, rather than as associations taxable as corporations, for federal income tax purposes, and upon the continuing near equivalence of corporate federal income tax rates and maximum marginal individual tax rates. * * *

Nearly identical statements appear in the summary of proxy statement for the October 17, 1984, special meeting of shareholders regarding the formation of the third limited partnership.

We are convinced that petitioner not only knew what type of entity it was investing in, but also knew the importance of that choice of entity. Moreover, of particular significance is the fact that the record is devoid of evidence that petitioner, upon whom the burden of proof rests, did not sign and transmit both proxies in favor of the creation of and participation in the partnerships. We must therefore conclude that both were thus signed by petitioner, and by thus signing and transmitting such proxies, petitioner did indeed join together with the other stockholders in the formation of the partnerships. A vote in favor of the formation of the partnerships was the equivalent of simultaneously *making application* to become a partner, albeit a limited partner, in the partnerships.[4]

2. Having determined that petitioner received UBTI from its investment in the partnerships, we now turn to the tax consequences of the receipt of UBTI. The parties agree that peti-

---

[4] Petitioner's argument that its lack of a voice in management prevented the very formation of a partnership is without merit. Petitioner admits that the word "member" in sec. 512(c) should be read to include a "silent partner". See *Service Bolt & Nut Co. Profit-Sharing Trust v. Commissioner*, 78 T.C. 812, 818 (1982), affd. 724 F.2d 519 (6th Cir. 1983). Petitioner offers no explanation for how a "silent partner" is properly considered a "member" for purposes of sec. 512(c), but, as petitioner contends, the lack of a voice in management prevents the taxpayer from even forming a partnership. Finally, we note that petitioner joined in the formation of the partnership through the investment of its capital in the partnership.

tioner is a charitable remainder unitrust within the meaning of section 664(d)(2). Charitable remainder unitrusts are taxable under section 664(c), which states:

SEC. 664(c). EXEMPTION FROM INCOME TAXES.—A charitable remainder annuity trust and a charitable remainder unitrust shall, for any taxable year, not be subject to any tax imposed by this subtitle, unless such trust, for such year, has unrelated business taxable income (within the meaning of section 512, determined as if part III of subchapter F applied to such trust).

It is clear that a charitable remainder unitrust is tax exempt as long as it remains free from UBTI. The treatment of a charitable remainder unitrust that does receive UBTI is clarified by section 1.664–1(c), Income Tax Regs., which states: "If the charitable remainder trust has any unrelated business taxable income (within the meaning of section 512 and the regulations thereunder * * *) for any taxable year, the trust is subject to all of the taxes imposed by subtitle A of the Code for such taxable year." An example made part of the regulation clearly states: "Because the trust has some unrelated business taxable income in 1975, it is not exempt for such year. Consequently, the trust is taxable on *all of its income* as a complex trust." (Emphasis supplied.)

Having decided that petitioner received UBTI from its interests in the limited partnerships, it follows that the receipt of UBTI causes petitioner to be taxable to the full extent of its income as a complex trust. Petitioner argues that the statute is ambiguous and does not require such a result and the applicable regulation is arbitrary and capricious and, therefore, invalid. We hold otherwise.

Whatever ambiguity may exist in section 664(c) is removed by section 1.664–1(c), Income Tax Regs. That regulation makes it clear that when a charitable trust receives UBTI in any year, it is taxable on its entire income for that year.

All Treasury regulations are entitled to a high degree of deference from the courts. A Treasury regulation must be upheld if it "[implements] the congressional mandate in some reasonable manner". *National Muffler Dealers Association v. United States,* 440 U.S. 472, 476–477 (1979) (quoting *United States v. Correll,* 389 U.S. 299, 307 (1967)). Put differently, Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes".

*Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948).[5] For the reasons stated below, we think that section 1.664–1(c), Income Tax Regs., is neither unreasonable nor inconsistent with section 664(c).

The plain language of section 664(c) states that a charitable trust will be exempt from tax "unless such trust, for such year, has unrelated business taxable income". Petitioner would have us add the phrase "then the trust will be taxable only on that unrelated business taxable income" to the above quoted phrase. We decline to do so. The word "unless" clearly conditions the previously granted exemption. No persuasive evidence has been called to our attention to show that Congress meant to continue to provide a limited exemption if the taxpayer failed to meet the terms of the complete exemption.

Petitioner argues that the legislative history accompanying section 664(c) supports its conclusion that Congress intended to tax charitable trusts only to the extent of UBTI. Section 664 was added by section 201(e) of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487. The original House version made no reference to UBTI, providing a blanket tax exemption. H.R. 13270, 91st Cong., 1st Sess. sec. 201(i) (1969). The Senate amendments added the current language of section 664(c).

Petitioner quotes language from the Senate Finance Committee stating that "The Committee does not believe that it is appropriate to allow the unrelated business income tax to be avoided by the use of a charitable remainder trust rather than a tax exempt organization." S. Rept. 91–552 (1969), 1969–3 C.B. 423, 481–482. Petitioner focuses upon this language in its attempt to show that Congress was concerned only with the unrelated business income tax, which is imposed only on UBTI. Therefore, petitioner contends, Congress meant to tax only UBTI.

The sentence preceding the above-quoted material leads us to a different conclusion. There the Senate Finance Committee stated that "The committee amendments modify * * * [the trust's tax exemption] so as to *deny the exemption from*

---

[5] The regulations here involved are supported not only by the Secretary's *general* authority in sec. 7805(a) to promulgate regulations, but also by the *specific* provisions in sec. 664(a) which state that sec. 664 shall apply "in accordance with regulations prescribed by the Secretary." Such specific authority granted to the Secretary calls for an even higher degree of deference to the regulations.

*tax* for any year in which the trust has income which would be unrelated business taxable income if the trust were an exempt organization subject to the unrelated business income tax." *Id.* at 481 (emphasis added). The committee spoke in terms of a complete denial of the exemption, as is the effect of the Commissioner's regulation.

The plain language of the statute and our review of the relevant legislative history persuade us that section 1.664–1(c), Income Tax Regs., is a fair and reasonable interpretation of section 664(c). Moreover, "Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought." *Nelson v. Commissioner,* 30 T.C. 1151, 1154 (1958). Indeed, it has even been stated that a "well founded doubt is fatal to the claim [for exemption]". *Estate of Bowers v. Commissioner,* 94 T.C. 582, 590 n.2 (1990) (quoting *Bank of Commerce v. Tennessee,* 161 U.S. 134, 146 (1896)); *Butka v. Commissioner,* 91 T.C. 110, 117 n.6 (1988) (quoting the same language from *Bank of Commerce v. Tennessee, supra*), affd. without published opinion 886 F.2d 442 (D.C. Cir. 1989).

In arguing against an interpretation of the statute that requires all the income to be subject to tax if there is some UBTI, petitioner says that such interpretation would result in the trust's forfeiture of its exempt status "no matter how deminimis [sic]" such UBTI might be. However, no such situation is involved here. Petitioner's UBTI in this case was substantial, $178,929 in 1988 and $291,689 in 1989. We therefore need not address the question whether the statute and regulation can be interpreted in such manner as to call for a different result in the case of a de minimis level of UBTI. Cf. *Manning Association v. Commissioner,* 93 T.C. 596, 603 (1989); *Copyright Clearance Center, Inc. v. Commissioner,* 79 T.C. 793, 805 (1982).

We have found that petitioner's interests in the limited partnerships led to the receipt of substantial amounts of UBTI under section 512, and that the receipt of such UBTI causes petitioner to be taxable to the full extent of its income under section 664(c).

3. We find further that petitioner is liable for the section 6661 addition to tax for the year 1988. Petitioner's income tax required to be shown on its 1988 return is $126,276. The

income tax shown on petitioner's 1988 return is $52,241. Therefore, the understatement of income tax of $74,035 exceeds the greater of $12,628 (10 percent of $126,276) or $5,000 and constitutes a substantial underpayment under section 6661. As petitioner conceded the fact that its Schedule D net gains were understated and offered no argument that it had substantial authority for the position taken or that it disclosed its position, we sustain the Commissioner's addition to tax under section 6661.

*Decision will be entered for respondent.*