T.C. Memo. 1997-320


UNITED STATES TAX COURT


JAMES A. PICARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2768-95.                    Filed July 9, 1997.


<u>Martin J. Tierney</u> and <u>D. Dewey Watson</u>, for petitioner.

<u>Kevin G. Croke</u>, for respondent.


MEMORANDUM OPINION


GALE, <u>Judge</u>:  Respondent determined a deficiency of $3,169

in petitioner's 1992 Federal income tax and an addition to tax

pursuant to section 6651(a)[1] of $782.25.  This case was submitted

---

[1]Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
                                        (continued...)

to the Court fully stipulated pursuant to Rule 122.  After concessions,[2] the remaining issue for decision is whether payments made to petitioner by the City of Oakland during the year in issue pursuant to the Oakland City Charter's retirement provisions for public safety employees are excludable from gross income under section 104(a)(1).  We hold that the payments in question are not excludable.

The Court bases its findings of fact on the stipulation of facts and attached exhibits, which are incorporated herein by this reference.  Petitioner resided in Klamath Falls, Oregon, at the time he filed the petition.  Petitioner was born on June 15, 1940.  He commenced employment as a member of the Police Department of the City of Oakland, California, on October 31, 1966.  He served on active duty until February 16, 1969, on which date he suffered injuries that occurred while he was engaged in the performance of his duties.  Effective April 1, 1972, petitioner was retired for disability by reason of these injuries, by action of the Oakland Police and Fire Retirement Board (the Board), which found petitioner's disability to be service connected.  As a result of the Board's action, effective

----

[1](...continued)
Procedure.

[2]The parties have stipulated that petitioner is not liable for the addition to tax pursuant to sec. 6651(a).

April 25, 1972, petitioner became qualified for and began receiving a disability retirement allowance in lieu of permanent workmen's compensation.

Petitioner's disability retirement allowance was provided pursuant to the provisions of Article XXVI of the Charter of the City of Oakland (Oakland Charter). The Oakland Charter establishes a retirement system for members of the Oakland Police and Fire Departments, which provides both for retirement incident to the completion of specified years of service (service retirement) and for retirement incident to disability caused by injury in the performance of duty (disability retirement).[3] Section 2610(a) of the Oakland Charter provides for such disability retirement, and the payments to petitioner at issue in this case were awarded under that section.

Pursuant to section 2610(a) of the Charter, the retirement allowance provided to a disabled member of the Police Department depends upon whether or not he is qualified for service retirement (as established under section 2608 of the Charter) at the time of his disability retirement. If the member is qualified for service retirement, his disability retirement allowance is computed under section 2608 of the Charter, which sets out the rules and formulas for service retirement generally.

---

[3]The Charter also provides for retirement for disability not incurred in the performance of duty and for various death benefits, but those provisions are not involved in this case.

If he is not qualified for service retirement, section 2610(a) of the Charter provides that the disabled member's disability retirement allowance is initially set at 75 percent of the compensation attached to his average rank during the 1 year immediately preceding retirement (1-year average compensation). This "75-percent" retirement allowance is paid

> until the date upon which said member would have completed twenty-five (25) years of service and qualified for service retirement had such member rendered service without interruption, and on and after said date said retirement allowance shall be equal to the retirement allowance said member would have received if retired for service on said date, based on the compensation attached to the average rank held during the one (1) year next preceding retirement. * * * [Oakland Charter sec. 2610(a).[4]]

Section 2608 of the Oakland Charter, governing service retirement, generally provides for a retirement allowance equal to 50 percent of the compensation attached to the average rank held during the 3 years immediately preceding retirement (3-year average compensation) for members of the Police and Fire Departments with 25 years of service, or 20 years of service if they have reached age 55.[5]

_____

[4]The text of Oakland Charter sec. 2610(a) is reproduced in the appendix to this opinion.

[5]Greater percentages are provided for those who exceed the foregoing thresholds, and lesser percentages are provided for those who do not meet the thresholds but have at least 10 years of service. Members with more than 10 but less than 20 years of

(continued...)

"Years of service" for purposes of section 2608 of the Charter are computed under section 2609 of the Charter, which counts as service, inter alia, "time during and for which said member received compensation as a member of the Police or Fire Department * * *, including all such time said member was unable to perform his duties by reason of injury or sickness from any cause."[6]

Pursuant to Oakland Charter section 2610(a), the disability retirement allowance that petitioner began receiving was equal to 75 percent of 1-year average compensation, since petitioner was not qualified for service retirement under section 2608 of the Charter at the time he was retired for disability.  Petitioner received an allowance so computed until October 31, 1991, the date on which he would have completed 25 years of service and qualified for service retirement if he had rendered service without interruption from the date he commenced employment as a member of the Police Department.  On October 31, 1991, petitioner's disability retirement allowance was recomputed,

---

[5](...continued)
service cannot, in any event, begin receiving their retirement allowances until the date which is 25 years after the date they commenced employment.  Members with less than 10 years of service generally cannot qualify for service retirement.
     The text of Oakland Charter sec. 2608 is reproduced in the appendix.

[6]The text of Oakland Charter sec. 2609 is reproduced in the appendix.

pursuant to the terms of section 2610(a) of the Charter, from 75 to 50 percent of 1-year average compensation. This recomputed amount was equal to the amount petitioner would have received if he had served without interruption for 25 years and retired for service on that date, with one modification: the compensation base to which the 50-percent allowance was applied was 1-year average compensation rather than the 3-year average compensation utilized in computing "regular" service retirement allowances under Oakland Charter section 2608.

The parties have stipulated that the amounts received prior to October 31, 1991, are excludable under section 104(a)(1). The parties have also stipulated that petitioner did not receive any service credit under section 2609 of the Oakland Charter for the time during which he received a disability retirement allowance pursuant to section 2610(a) of the Charter.

During the year in issue, petitioner received payments totaling $27,007 from the City of Oakland, awarded pursuant to section 2610(a) of the Charter. The parties have stipulated that the only issue for decision is whether those payments are excludable from gross income as disability payments under section 104(a)(1).

The Internal Revenue Code defines "gross income" as follows: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". Sec. 61(a). One

of the aforementioned exceptions is contained in section 104, which excludes from gross income certain compensation for injuries or sickness.  Section 104(a)(1) provides:

> SEC. 104(a). In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--
>
> (1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness * * *

The regulations further provide that the exclusion under section 104(a)(1) applies in the case of amounts received "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment."  Sec. 1.104-1(b), Income Tax Regs.  Whether a statute is in the nature of workmen's compensation depends upon whether payments under the statute are made because of injuries sustained in the line of duty.  Dyer v. Commissioner, 71 T.C. 560, 562 (1979).  Finally, of most significance to the issue in this case, the regulations under section 104 limit the scope of the exclusion under section 104(a)(1) as follows:

> section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service,  * * *  even though the employee's retirement is occasioned by an occupational injury or sickness.  [Sec. 1.104-1(b), Income Tax Regs.]

Respondent does not dispute that the injuries suffered by petitioner were sustained in the line of duty and indeed has

conceded that the section 104(a)(1) exclusion covers the payments received by petitioner from the time he was retired for disability until October 31, 1991, the date the payments were recomputed pursuant to the provisions of the Oakland Charter. Respondent contends, however, that the recomputed payments received after October 31, 1991, are not excludable under section 104(a)(1) by virtue of the exception to the applicability of that section provided in section 1.104-1(b), Income Tax Regs., for "a retirement pension or annuity to the extent that it is determined by reference to the employee's * * * length of service". Therefore, we must decide whether the "length of service" proviso in the regulations precludes exclusion under the circumstances presented in this case, where disability payments initially excludable under section 104(a)(1) are subsequently recomputed, as of the date when petitioner would have qualified for service retirement if he had continued work uninterrupted, and as so recomputed the payments approximate the service retirement benefit that petitioner would have received if he had in fact continued working until that date.[7]

---

[7]We note that petitioner has not challenged the validity of sec. 1.104-1(b), Income Tax Regs. This Court has previously upheld the validity of the regulation in Wiedmaier v. Commissioner, T.C. Memo. 1984-540, and was expressly affirmed in that regard in Wiedmaier v. Commissioner, 774 F.2d 109 (6th Cir. 1985).

This Court has previously considered similar issues in two memorandum opinions, Wiedmaier v. Commissioner, T.C. Memo. 1984-540, affd. 774 F.2d 109 (6th Cir. 1985), and Mabry v. Commissioner, T.C. Memo. 1985-328. Both cases involved initial payments to disability retirees conceded to be excludable under section 104(a)(1) that were subsequently recomputed, on the date when the taxpayers would have qualified for service retirement if they had continued work uninterrupted, to substantially approximate the amount of the service retirement benefit for which the taxpayers would have qualified if they had retired based on years of service on that date. In both cases the Court concluded that the recomputed payments were ineligible for exclusion under section 104(a)(1), by virtue of section 1.104-1(b), Income Tax Regs.

Wiedmaier involved payments made under the Policemen and Firemen Retirement System incorporated in the Charter of the City of Detroit (Detroit Charter). Like the Oakland Charter at issue in this case, the Detroit Charter provided an integrated plan of disability and service retirement for members of the city police and fire departments. The Detroit Charter further resembled the Oakland Charter in three important respects: (i) Members qualified for service retirement at the time they were retired for disability were accorded retirement benefits computed under the service retirement provisions of the Charter; (ii) members

not qualified for service retirement at the time they were retired for disability were accorded a fixed percentage (66-2/3 percent) of their final compensation until the date upon which they would have qualified for service retirement if they had continued work uninterrupted; and (iii) on that date, such members' retirement allowance was recomputed in conformance with the terms of the service retirement provisions of the Charter, treating time spent on disability as equivalent to time spent in active service.

The taxpayer in Wiedmaier was a Detroit firefighter who was retired for an employment-connected disability on June 6, 1977, approximately 10 months prior to qualifying for service retirement. Under the Detroit Charter, the taxpayer therefore initially received payments equal to 66-2/3 percent of his final compensation until March 30, 1978, the date on which he reached 25 years of service, treating both time actually working and time spent on disability as equivalent service for this purpose, as provided in the Charter. On March 30, 1978, and thereafter, payments to the taxpayer were computed under the service retirement provisions of the Charter, likewise treating time working and time on disability as equivalent service, with the result that the payments were reduced from 66-2/3 percent of final compensation to 50 percent of average compensation during the 5 years preceding retirement. The Court concluded that the

recomputed payments were no longer excludable under section 104(a)(1) because they "were computed only with reference to * * * [the taxpayer's] length of service."  Wiedmaier v. Commissioner, supra.  The Court reasoned:

> Section 104(a)(1) excludes disability payments, not pension payments from income.  Section 1.104-1(b), Income Tax Regs., acts to prevent pension payments that are disguised as disability payments from being excluded under section 104(a)(1).  If a retirement provision is meant to compensate employees for their disability and not for their creditable service, then payments are computed with regard to the injured employee's disability, not with regard to the number of years that the employee has worked for the organization. * * * [Id.]

Mabry v. Commissioner, supra, involved payments under the same provisions of the Oakland Charter as are at issue in this case, with one modification noted below.  The taxpayer in Mabry was a member of the Oakland Fire Department retired for an employment-connected disability on July 1, 1960, prior to qualifying for service retirement.  Accordingly, pursuant to section 2610(a) of the Oakland Charter, the taxpayer commenced receiving payments on that date equal to 75 percent of 1-year average compensation.  Approximately 3 months later, on September 27, 1960, the taxpayer turned 55 and, since he had 22 years of service, became qualified for service retirement,[8] treating time

_____

[8]The version of sec. 2610(a) of the Oakland Charter applicable to the year at issue in this case requires the 75-percent payments to be recomputed on the date when the member "would have completed twenty-five (25) years of service and

(continued...)

spent on disability as equivalent to time spent working for this purpose. Pursuant to the terms of section 2610(a) of the Charter, the taxpayer's disability retirement allowance was then recomputed as if he had taken service retirement on September 27, 1960. As a result, his payments were reduced from 75 percent to 50 percent of 1-year average compensation.

In Mabry, we interpreted section 1.104-1(b), Income Tax Regs., as follows:

> In conformity with * * * [section 1.104-1(b), Income Tax Regs.], we and other courts have consistently held that, in order to be excludable under the provisions of section 104(a)(1), retirement pensions or payments may not be based upon any factor other than disability and, where payments are based upon any other factor, such as age or length of service on the job, the retirement plan in question will not qualify as similar to workmen's compensation acts within the meaning of section 104. [Citations omitted.]

Relying on Wiedmaier v. Commissioner, T.C. Memo. 1984-540, we concluded in Mabry v. Commissioner, T.C. Memo. 1985-328, that the recomputed payments were not excludable under section 104(a)(1), based on section 1.104-1(b), Income Tax Regs., reasoning that

---

[8](...continued)
qualified for service retirement" had such member rendered service without interruption. The version of sec. 2610(a) of the Charter applicable in Mabry v. Commissioner, T.C. Memo. 1985-328, required the recomputation when the member (merely) "would have qualified for service retirement". Consequently, since a member could qualify for service retirement either with 25 years of service or with 20 years if he had attained age 55, the Mabry version of sec. 2610(a) of the Charter resulted in a recomputation at the 22-year mark when the taxpayer turned 55.

after the recomputation the taxpayer "was no longer being paid purely on the basis of his disability, but started to receive new and different payments based upon his age and years of service". Id.

Wiedmaier v. Commissioner, supra, Mabry v. Commissioner, supra, and the instant case involve substantially similar arrangements wherein disability retirement payments that are initially excludable under section 104(a)(1) are subsequently recomputed on the date when the disabled employee would have qualified for service retirement if he had continued work uninterrupted. The recomputed payments are set at the (reduced) amount that the employee would have received if he had taken service retirement on that date, treating the time actually working and the time spent on disability as equivalent for this purpose. We concluded in Wiedmaier and Mabry that the payments resulting from such a recomputation were "determined by reference to the employee's age or length of service" within the meaning of section 1.104-1(b), Income Tax Regs., and our opinion in Wiedmaier was affirmed by the Court of Appeals for the Sixth Circuit. Wiedmaier v. Commissioner, 774 F.2d 109 (6th Cir. 1985). We see no reason for a different result here.

Petitioner argues that Wiedmaier and Mabry are distinguishable because the taxpayers therein received formal service credit for time spent on disability under the municipal

charter terms at issue in those cases, whereas it has been
stipulated in the instant case that petitioner did not receive
any service credit under section 2609 of the Oakland Charter
during the time that he received a disability retirement
allowance.  Moreover, petitioner argues, because the taxpayers in
the two prior cases got service credit, their payments actually
converted under the charter terms from disability retirement to
service retirement payments at the time of recomputation, whereas
his did not.[9]  In petitioner's view, it is the formal crediting
of time spent on disability as "service" under the charters'

---

[9]Petitioner relies heavily on Boystel v. Commissioner, T.C.
Memo. 1961-146, to support his position that the retirement
payments after the 25th anniversary of his hire date could not
have converted to service retirement payments because he did not
receive credit for service while on disability.  We do not
believe Boystel helps petitioner.  In Boystel, the Commissioner
unsuccessfully challenged the sec. 104(a)(1) exclusion for
payments received in and after the 25th year following the year
of hire of a taxpayer who had been previously retired for, and
was receiving payments on account of, a job-connected disability.
The taxpayer had retired for disability prior to completing 25
years of (actual) service, the period necessary to qualify for
service retirement under the applicable police regulations.  The
Commissioner sought to deny the sec. 104(a) exclusion for
payments received in 1955 (and thereafter), which was the year in
which the taxpayer would have completed 25 years of actual
service but for the disability retirement.  However, Boystel did
not involve a recomputation of the payments at the 25-year mark,
and sec. 1.104-1(b), Income Tax Regs., was not considered or
cited in the case.  The taxpayer was receiving the same payment
in the 25th year following his hire date (and thereafter) as that
initially awarded him when he had been retired for disability 8
years earlier.  Thus, the challenged payments had not been
recomputed with reference to the period that the taxpayer was on
disability, and the Court had no occasion to consider the effect
of such a factor or the application of sec. 1.104-1(b), Income
Tax Regs.

terms that resulted in the Court's conclusion in <u>Wiedmaier</u> and <u>Mabry</u> that a payment based in part on time spent on disability constituted a payment "determined by reference to * * * length of service" within the meaning of section 1.104-1(b), Income Tax Regs. Because petitioner did not receive service credit for the time he spent on disability, he argues that the recomputation of his retirement payments on the 25th anniversary of his date of hire could not have been based on his length of service, because in his view he did not have 25 years of service as that term should be construed. The implication of petitioner's position is that time spent on disability should not count as "service" within the meaning of section 1.104-1(b), Income Tax Regs., unless the applicable workmen's compensation statute formally designates it as such.

We believe petitioner construes <u>Wiedmaier</u> and <u>Mabry</u> too narrowly. It is true that the Court in <u>Mabry</u> found, apparently pursuant to the parties' stipulation, that time spent by the taxpayer on disability was formally credited as service under section 2609 of the Oakland Charter, and that as a consequence the taxpayer's retirement payments converted on the recomputation date from disability retirement payments under section 2610(a) of the Charter to service retirement payments under section 2608 of the Charter. The <u>Wiedmaier</u> opinion is at least susceptible of a

similar reading.[10]  However, there is no indication that the

municipal charters' designation of time spent on disability as

"creditable service", or as eligible for service credit, was

dispositive in either prior case.  Irrespective of the technical

labels, the charter provisions in both cases functioned the same

way, _deeming_ time spent on disability as equivalent to time spent

actively working, and counting both in setting the date when a

disabled employee was treated _as if_ he had taken service

retirement, with a corresponding adjustment to his retirement

payments.  The charter provisions in the instant case are

functionally indistinguishable from the foregoing.[11]  The

---

[10]The _Wiedmaier_ opinion at times refers to disability time
and active working time collectively as "creditable service", the
Detroit Charter's formal designation of the employment periods
counted for purposes of retirement benefits.  Arguably, this
suggests that the Charter's formal categorization mattered in the
Court's analysis.  Elsewhere, however, the opinion refers to
disability and working time collectively as "length of service"
or as "the number of years the employee * * * worked for the
organization", suggesting that the equivalence of disability and
working time did not depend upon the Charter's formal labels.

[11]Citing _Givens v. Commissioner_, 90 T.C. 1145 (1988),
petitioner argues that Oakland Charter sec. 2610(a)'s treatment
of a disability retiree "as if" he had taken service retirement
on the 25th anniversary of his hire does _not_ mean that the
disability retirement allowance recomputed on that premise "is
determined by reference to the employee's age or length of
service" (quoting sec. 1.104-1(b), Income Tax Regs.).  _Givens_
involved the question of whether certain payments were for job-
related injury, so that they qualified as workmen's compensation
within the meaning of sec. 104(a)(1).  The amounts were paid
under a municipal workmen's compensation statute that offered as
compensation for job-related injury the same "sick leave"
benefits available to workers with non-job-related injury.  (The
(continued...)

difference is that time spent on disability was not formally credited as "service". We do not believe this should matter. To conclude otherwise would make the taxation of workmen's compensation payments turn on mere labels employed in the municipal charter.

We also find unpersuasive petitioner's argument that his post-October 31, 1991, payments did not, in contrast to those in Mabry v. Commissioner, T.C. Memo. 1985-328, convert from disability retirement payments under section 2610(a) of the Oakland Charter to service retirement payments under section 2608 of the Charter. Even if made pursuant to the disability retirement provisions of section 2610(a) of the Charter rather

---

[11](...continued)
statute provided that an employee could elect to receive, as compensation for job-related injury, the same sick leave "to which he would be entitled * * * if his injuries had not arisen out of or in the course of his employment". Givens v. Commissioner, supra at 1149.) We concluded that since the sick leave payments were provided, under the statute's terms, as compensation for job-related injury, they were received under a workmen's compensation statute and excludable under sec. 104(a)(1). It did not matter that the payments were computed "as if" non-job-related injury were being compensated.

Petitioner apparently would have us apply an analogous principle in the instant case, namely, that it does not matter that the payments to him after the 25th anniversary date of his hire were computed "as if" he had taken service retirement (based on his years of actual service and of "deemed" service while on disability), so long as his retirement was for job-related injury. We decline to do so. Givens was not concerned with sec. 1.104-1(b), Income Tax Regs., and that regulation makes clear that an exclusion under sec. 104(a)(1) depends not only on whether the payment was for job-related injury but also on whether it was determined by reference to length of service.

than the service retirement provisions of section 2608 of the Charter, the payments must still pass muster under section 1.104-1(b), Income Tax Regs. That regulation makes clear that even a payment triggered by disability is subject to the proscription against using length of service in computing the payment. Section 1.104-1(b), Income Tax Regs., provides that the section 104(a)(1) exclusion does not apply to a retirement pension or annuity to the extent that it is determined by age or length of service "even though the employee's retirement is occasioned by an occupational injury or sickness". (Emphasis supplied.) Even a payment conceded to be occasioned by disability is not excludable to the extent it is determined by reference to length of service.

Petitioner also cites various differences in the treatment of "regular" service retirees under Oakland Charter section 2608 (that is, service retirees receiving benefits based on years of actively working) and disability retirees whose payments are recomputed under Oakland Charter section 2610(a) "as if" they were service retirees. For example, Oakland Charter section 2608 retirees may, by working longer than 25 years, become eligible for allowance percentages higher than 50 percent,[12] whereas Oakland Charter section 2610(a) disability retirees whose allowance percentage is recomputed at 50 percent are never

---

[12]See sec. 2608(e) of the Oakland Charter, reproduced in the appendix.

eligible for a higher rate.  For an Oakland Charter section 2608

retiree, the compensation base to which the allowance percentage

is applied is 3-year average compensation, whereas for an Oakland

Charter section 2610(a) disability retiree receiving "quasi"

service retirement, the base is 1-year average compensation.[13]

We note that these differences also existed in Mabry, which

involved the same provisions of the Oakland Charter as are at

issue in this case (with one insignificant modification noted

previously[14]), and they did not affect the result therein.  We

believe here as well that such differences are unimportant.

Disability retirees need not be treated identically to service

retirees in order for their allowance payments to be included in

income.  It is sufficient if their disability allowance is

determined by reference to length of service, and we believe such

is the case with petitioner.

We conclude that "length of service" as used in the

regulation encompasses both time actively working and time spent

on disability when both are treated as equivalent in determining

retirement benefits, regardless of whether time spent on

---

[13]Petitioner also argues that an Oakland Charter sec.
2610(a) retiree receiving "quasi" service retirement, unlike an
Oakland Charter sec. 2608 retiree, is theoretically subject to
recall and that there are differences in each category's
obligation to repay certain compensatory awards, which respondent
disputes.

[14]See supra note 8.

disability is formally designated as "service" under the applicable workmen's compensation statute.  As was the case in Wiedmaier v. Commissioner, T.C. Memo. 1984-540, and Mabry v. Commissioner, supra, the recomputation of petitioner's disability retirement payments was a direct function of his date of hire. We believe this feature is sufficiently connected to the concept of "length of service" to bring the recomputed payments within the proscription of section 1.104-1(b), Income Tax Regs., for pensions "determined by reference to * * * length of service". This interpretation is reinforced by the fact that the purpose of the recomputation was to make petitioner's disability payments approximate the pension payments provided to other employees based on years of actual service.  "Section 1.104-1(b), Income Tax Regs., acts to prevent pension payments that are disguised as disability payments from being excluded under section 104(a)(1)." Wiedmaier v. Commissioner, supra.  Our conclusion is consistent with the Court's prior holdings in Mabry and Wiedmaier.  This result also comports with the general rule that "Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought." Newhall Unitrust v. Commissioner, 104 T.C. 236, 247 (1995) (quoting Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958)).  Accordingly, the payments to petitioner during the year at issue were

determined with reference to petitioner's "length of service" within the meaning of section 1.104-1(b), Income Tax Regs., and are therefore ineligible for the exclusion provided in section 104(a)(1).

Petitioner raises one final argument in his reply brief, that the phrase "to the extent" in section 1.104-1(b), Income Tax Regs., permits petitioner to exclude the disability allowance. Petitioner relies on four revenue rulings: Rev. Rul. 72-44, 1972-1 C.B. 32; Rev. Rul. 80-44, 1980-1 C.B. 34; Rev. Rul. 85-104, 1985-2 C.B. 52; and Rev. Rul. 85-105, 1985-2 C.B. 53. The revenue rulings all involve situations where the employee was paid a base percentage amount in the nature of worker's compensation if retired for disability, and was paid additional amounts, over and above the base amount, if the employee had a sufficient number of years of service. The Revenue Rulings all held that the base amount was excludable but that the amounts over and above the base amount were includable because they were determined by reference to length of service. In the instant case, however, the allowance that petitioner received that was not determined by reference to length of service (75 percent of 1-year average compensation) exceeded the allowance that was determined by reference to length of service (50 percent of 1-year average compensation). The revenue rulings, therefore, have no relevance to this case. The payments received by petitioner

after the recomputation were determined entirely by reference to his length of service.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.

Appendix

Charter of the City of Oakland, Article XXVI, Sections 2608, 2609, and 2610(a)

**Retirement for Service**

Section 2608.
(a)  Any member of the Police or Fire Department who completes at least ten (10) years of service in the aggregate (said service to be computed under Section 2609) may retire at his option on or after the twenty-fifth (25th) anniversary of his date of employment. Said member shall receive a retirement allowance equal to twenty percent (20%) of the compensation attached to the average rank held during the three (3) years immediately preceding such retirement, plus an additional allowance at the rate of two percent (2%) for each additional year of service beyond ten (10) years, not to exceed a period of an additional ten (10) years.

(b)  Any member of the Police or Fire Department who completes at least twenty (20) years of service in the aggregate (said service to be computed under Section 2609), regardless of age, may retire at his option. Said member shall receive a retirement allowance equal to forty percent (40%) of the compensation attached to the average rank held during the three (3) years immediately preceding such retirement, plus an additional allowance at the rate of two percent (2%) for each additional year of service beyond twenty (20) years, not to exceed a period of an additional five (5) years.

(c)  Any member of the Police or Fire Department who completes at least twenty-five (25) years of service in the aggregate (said service to be computed under Section 2609), regardless of age, or any member who completes at least twenty (20) years of service in the aggregate at or after attaining the age of fifty-five (55) years, may retire for service at his option.

(d)  Members shall be retired on the first day of the month next following the attainment by them of the age of

sixty-five (65) years. Any such member who attains the age set forth in the preceding sentence as the compulsory age of retirement during any twelve (12) months, prior to the beginning of the twelve (12) months, shall be retired on the first day of the twelve (12) months.

(e) A member retired after meeting the requirements of paragraphs (c) or (d) next preceding, shall receive a retirement allowance equal to fifty percent (50%) of the compensation attached to the average rank held during the three (3) years immediately preceding such retirement, plus an additional allowance at the rate of one and two-thirds percent (1 2/3%) of said compensation for each year of service rendered after July 1, 1951, and after qualifying for service retirement, not to exceed ten (10) years. A member required to retire under paragraph (d) next preceding before completing twenty (20) years of service in the aggregate computed under Section 2609, shall receive a retirement allowance which bears the same ratio to the retirement allowance which said member would receive if he were entitled to be credited with twenty (20) years of service, as the service with which he is entitled to be credited, bears to twenty (20) years.

(f) Upon the death of member after qualification for service retirement, or after retirement for service or because of disability, and if death shall result from other cause than injury received in or illness caused by the performance of duty, two-thirds (2/3) of the retirement allowance to which the member would have been entitled if he had retired for service at the time of death, or two-thirds (2/3) of the retirement allowance as it was at death, as the case may be, shall be continued, regardless of the age of the surviving widow, to the dependents of the member in the order of succession as defined in Section 2612, provided that if retirement was for injury received in or illness caused by the performance of duty and if death occurs prior to the date upon which the member would have qualified for service retirement, the allowance continued shall be reduced upon said date in the same manner as it would have been reduced had the member not died.

(g) After having qualified for service retirement under the provisions of paragraph (a) of this section, a member

shall be entitled to retire at any time thereafter and nothing shall deprive said member of said right.

(h)   The age of a member which was accepted for appointment to the Police or Fire Department shall be admissible in evidence as prima facie proof of his age for retirement purposes.

(i)   If, at the date of retirement for service or disability, said member has no wife, children or dependent parents, who would qualify for the continuance of the allowance after the death of said member, or with respect to the portion of the allowance which would not be continued, regardless of dependents, a member retired under this Article may elect, before the first payment of the retirement allowance is made, to receive the actuarial equivalent of his allowance or the portion which would not be continued, regardless of dependents, as the case may be, partly in a lesser amount to be received by him throughout his life, and partly in other benefits payable after his death to another person or persons, provided that such election shall be subject to all of the conditions prescribed by the Council to govern similar election by members of the Oakland Municipal Employees' Retirement System. (Amended by: Stats. June 1976.)

(j)   The retirement allowances payable pursuant to this section are subject to the limitations provided by Section 2620.  This subsection shall be null and void and without further effect should the United States Internal Revenue Code Section 415 be amended to exempt municipal pension plans from the stated benefit limitations. (Added by: Stats. November 1992.)

**Time and Service to be Included**

Section 2609.  The following time and service shall be included in the computation of the service to be credited to a member for the purpose of qualification for retirement and death benefits and for calculation of retirement benefits:

(1)   Time during and for which said member received compensation as a member of the Police or Fire Department prior or subsequent to the effective date of this Article, including all such time said member was unable to perform his duties by reason of injury or sickness from any cause.

(2) Time during which said member was absent by reason of service with the armed forces of the United States either during a war involving the United States as a belligerent, or in any other National Emergency and for six (6) months thereafter and who is not dishonorably discharged or released therefrom.

(3)  Any police or fire service outside the limits of the City of Oakland performed by a member of the Police or Fire Department and under orders of a superior officer of such member, shall be considered as city service and any disability or death resulting therefrom shall be considered as received in and arising out of the performance of duty.

**Disability Retirement**

Section 2610.
(a)  Any member of the Police or Fire Department who is incapacitated for the performance of duty by reason of any injury received in, or illness caused by or arising out of the performance of duty may be retired not sooner than one (1) year after said member first became incapacitated by reason of said injury or illness unless the member requests and the Board grants earlier retirement; and, if not qualified for service retirement shall receive a retirement allowance equal to seventy-five percent (75%) of the compensation attached to the average rank held by such member during one (1) year immediately preceding such retirement. Such retirement allowance shall be paid until the date upon which said member would have completed twenty-five (25) years of service and qualified for service retirement had such member rendered service without interruption, and on and after said date said retirement allowance shall be equal to the retirement allowance said member would have received if retired for service on said date, based on the compensation attached to the average rank held during the one (1) year next preceding retirement.  If at the time of retirement for disability, the member is qualified for retirement for service, said member shall receive a retirement allowance computed under the provisions of Section 2608.